I have the privilege of representing Amber Ard in this matter who has brought a claim against Lincoln County and the Sheriff of Lincoln County, Steve Rushing. As the Court is well aware, we are here before the Court on an appeal from a motion for summary judgment that was granted by the Southern District of Mississippi. The case, of course, involves the rape of my client while incarcerated in the Lincoln County Jail by a jailer. I present to the Court two issues today that I really would like to focus upon. First of all would be the factual issues concerning what the Sheriff of Lincoln County knew, when did he know it, and what did he do about it. Secondly would be the issue concerning the discovery violation of the failure of the County to produce a statement from a previous inmate who had been raped just a matter of months before my client was by the very same jailer. Now, Your Honors, first of all, as the Court may recall, that there was a report in 2006. My client was raped in June of 2010 in the jail. In 2006, an allegation was brought forth by an inmate, Sonia Smith. That allegation was turned over to the Mississippi Bureau of Investigation that made an investigation. And I would ask the Court to look specifically, in fact, at appellees tab number nine concerning the results of that. They have contended throughout this case that the result of that investigation was that the allegations by Sonia Smith were unsubstantiated. Nowhere in that report does it say that it was unsubstantiated. To the contrary, the investigators interviewed her and two other inmates. She talked about what happened to her personally by the jailer Miller. Secondly, she talked about what happened with respect to what another inmate had informed her had happened with a third inmate. Yet again, a fourth inmate was named in that report. As a result, 2006, absolutely nothing was done other than one minor thing that the Sheriff of Lincoln County did. And that was to post a one-page memo, which is tab seven to the appellee's record excerpts. All it says is a memo reviewing Sheriff Rushing's deposition. He admits in his deposition there is no policy. He says, we're working on it. And in fact, after 2006, Jailer Miller, who committed this act, was actually promoted to a supervisor over the jail, given the keys to all of the doors, allowed free access without any female jailers or dispatchers, as that memo states, to accompany him. You set out the facts very well, and they're pretty clear and they're pretty undisputed. What I would like for you to tell me is where did Judge Lee get it wrong? Focus on his opinion, how he erred, because that's what we are looking for, is the error of the district court. Yes, sir. And my understanding, Judge Jolly, is that looking at Judge Lee's opinion, number one, as to the knowledge of Sheriff Rushing in that regard, our position would be that Judge Lee had all inferences at a stage of summary judgment in favor of the county versus in favor of the non-moving party overall, as a general statement, Your Honor. Then, moving forward from that, looking at the policy, okay? First of all, was there a policy? Secondly, if there was a policy, was it adequate or inadequate to protect female inmates from male jailers in the facility? Now, Judge Lee wrote a fairly extensive opinion in this case. Yes, sir. And considered virtually all the issues that are on appeal now, pretty thoroughly, as I read the briefs and his opinion. Is that right? Well, yes, sir. However, I would state this, and that is we believe that we've clearly set out that there is a genuine issue of fact here. Tell us where. Tell us that. First of all, when you look at the inconsistencies of statements, okay? First of all, Sheriff Rushing says, well, I didn't know about the 2006 incident. But yet, you turn around, you look at the NBI report, they said they met with Sheriff Rushing. Then you look at the . . . And that's kind of a two-edged sword in the sense that your claim is deliberate indifference. And if he's calling for an independent investigation of these matters, it's certainly not deliberately indifferent. It may be negligent in the sense that he should have done more than he did. But it does not satisfy the requirement of deliberate indifference. And Judge Stolle, I would say this as well. Sheriff Rushing testified that whenever anything involved one of his employees in his department, that he always turned it over to the Mississippi Bureau of Investigation. But doesn't it cut against you? However, in 2007, there was another allegation made that the same jailer had approached a female inmate and asked her to show him her breasts. He didn't refer that to the Mississippi Bureau of Investigation. To the contrary, he had his own deputy chief just go around and ask female inmates who are incarcerated in the jail, subject to that same jailer's input . . . I'm sorry? Well, what did he say to the females? Frankly, Judge Jolly, according to his affidavit . . . That's what I'm asking? According to his affidavit, and that's all we have in this case is his affidavit, because some of this issue didn't arise until after discovery on previous events that had occurred in that jail. And he just simply said that they were unsubstantiated. Well, again, the problem here is that there's an inconsistency in how the sheriff of Lincoln County then is protecting female inmates in his jail. On the one hand, he says, well, I always send it to the MBI. On the other hand, he's got another incident where he doesn't do that. Well, now, the standard for your Eighth Amendment . . . you argue this is an Eighth Amendment case, is that right? Yes, sir, enforceable under 1983. And not as a Fourteenth Amendment case, because she was a detainee, and there may be a different standard, but you didn't argue that. You argued the Eighth Amendment standard, is that right? Well, I'm just generally have talked about Eighth Amendment, certainly. Deliberate indifference. Deliberate indifference. That's your standard. Yes, sir. In this case . . . And our position would be that when it comes to the deliberate indifference, you've got a sheriff over the course of some four years that has had at least four incidents and even a fifth that we find out after discovery that has occurred that he did nothing about it. That he didn't . . . yeah, but that could be all right if those incidents are the ones that he went to the state investigative people to come in and look at, or even if he posted a notice saying, stay out of here, and I mean stay out of here. He was not being deliberately indifferent. That's a high hill to climb. Respectfully, Judge Jolly, I would submit to you that the sheriff did nothing about keeping this jailer. It's a specific jailer who had been doing this repeatedly. He did nothing to . . . The same one that did it to this plaintiff. Yes, sir. He did nothing to remove . . . How many times did this particular jailer engage in sexual misconduct with female inmates . . . how many times did it occur? At least four. And are you telling us today that the record reflects that in each of those four incidences the sheriff did nothing? Is that what you're saying? In fact, Judge Jolly . . . Is that what you're saying? Yes, sir. Okay. What I'm saying is that he actually promoted this jailer to be a supervisor over the jail, gave him the keys to that, and did nothing about removing him from that . . . Okay. Those are the facts. Yes, sir. Those are the facts before Judge Lee. What did Judge Lee say about that? Well, Judge Lee did not believe that that rose to the level of deliberate indifference. Why? He explained himself. And his position, as I understand his opinion, is that he did not see that then as there being no policy in place. That is, he had this one memo up on a wall, but yet there was . . . and that Judge Lee looked at that as being enough to veil the sheriff and the county from liability. Our position . . . Deliberate indifference. Yes. In other words, because you're telling me that Judge Lee said, because they posted a that absorbed him of deliberate indifference to the problem. Yes, sir. And our position would be, furthermore . . . He didn't do enough. He didn't do enough. Number one, he left the keys in the hand of the very jailer involved. Number two, there's no other safeguards in place. There are no safeguards . . . What did Judge Lee say about that? Frankly, I don't recall him addressing those other than reciting them in the facts that were alleged by us, but in terms of weighing the evidence, those facts as far as that there was no register, for instance, of a jailer having to sign before he enters. They say, well, there were video cameras, but the video cameras were in the hallway, not in the cell block, and number two, on that point, they were not monitored 24-7. They were not recorded. There was no tape, for instance, to be reviewed later on and would have to be relied upon someone actually physically sitting there staring at a screen to see a jailer coming in or out. So in this instance, we've got a situation where it is set up for the rape of a female inmate simply by the posting of a memo on a wall that's not enforced because there's no safeguards to make sure it is complied with. You're talking about four incidents. I think one is the one with your client, right? Actually, Judge Costa, if you look at the 2006 incident, then within that same . . . That's the one that went to the MBI, and I think the district court judge said that the MBI talked to people and they couldn't corroborate what the victim said. Then there's the breast exposure incident that was investigated internally, and I know you're relying on this third C.G. Smith, I think, incident in which another lawsuit was filed, but wasn't that all brought to the attention of rushing long after your . . . I know it happened allegedly before your client's incident, but wasn't it brought to the sheriff's attention long after your client's incident? Frankly, Judge Costa, I have not had the opportunity to depose the sheriff or the investigator with the district attorney's office that took the statement as to the entire litany of that because that statement was not shown to us and produced to us until after I'd filed my response to the motion from some of the judges. But the data when she told the DA's office is after your client was assaulted, right? Well, that's what is contained in there, however, in the affidavit that I was able to get through her counsel that was representing her in her case, she said that the sheriff should have been known because . . . Wasn't that withdrawn? No, I did see that, but wasn't that . . . There was . . . actually, we were on a time limitation. I got an affidavit actually from her lawyer because she was having medical problems at the time. I came back later on and filed her affidavit to address that very issue, which I provided to him. He was able to get from her, and that was . . . Is the lawyer's affidavit still part of the record? It was withdrawn. Her affidavit, however, where she says that he knew or should have known is a part of the record and remains so. And for . . . Your Honor . . . He says he knew or should have known people . . . the jellers were going in the female area, not that he should have known she was raped. Correct. And that is specifically this jailer, Miller. Okay. Thank you, Mr. Corwin. Thank you. Thank you for your argument. Mr. Allen, we'll hear from you. May it please the Court. Good afternoon. I'm Will Allen for the defendants. Let me start by saying I am not going to address one of the four motions, and that is the motion where Judge Lee granted the motion to dismiss state law claims. The reason for that is simple. The plaintiff didn't respond to that motion at the district court level, hasn't provided any substantive arguments here, and the case law is very clear. I do want to jump right in on Sheriff Rushing, the summary judgment for him individually, because I can tell you what Judge Lee said. He had a very well-reasoned opinion on this. The plaintiff essentially says that Sheriff Rushing should have protected her from this sexual assault. To demonstrate that, she had to show two things, that she was housed under conditions that posed a substantial threat of harm to her, and that Sheriff Rushing was subjectively aware of that and deliberately disregarded it. Not objectively. He has to be subjectively aware. That is, it's not enough that he should have known and didn't draw the inference. Sheriff Rushing, and Judge Lee sets this out, the Lincoln County Jail had the typical protections you see in a penal facility, segregated women and men, behind locked doors, video cameras at certain areas. There was a sign. There wasn't a policy manual. The Sheriff did say in his deposition he was working on that, but they used post memos, and there was a memo that prohibited one-on-one access between male jailers and female inmates. The deputy in question, Timothy Miller, admitted the policy existed, admitted he knew it, and admitted the sign was up. In addition to that, Sheriff Rushing had a work schedule that had a female jailer on call, or on the schedule, 24 hours a day, 7 days a week. They worked two shifts. There was always a female scheduled to work. So the county had those things in place. So what the plaintiff has had to do is try to show that Sheriff Rushing was subjectively aware of this potential threat from Miller by pointing to these prior incidences. The Sonia Smith allegations, as you well know, were sent out to the Mississippi Bureau of Investigation. It's an outside investigatory agency. They spoke to the accuser, Sonia Smith. They talked to other female detainees with knowledge, and after doing that, they relayed to Major Dustin Barefield, who was with the Lincoln County, there's nothing to these allegations. They're unsubstantiated. So clearly, that has no impact on Sheriff Rushing's subjective awareness that Deputy Miller is a harm. It's just allegations that were investigated and found not to be valid. The jailhouse rumor was the same situation. It was investigated in-house by the chief deputy, Johnny Hall, but as Judge Lee points out, the record evidence demonstrates that Hall spoke to each female inmate. No female inmate said that Miller made that statement to her. No female inmate heard another inmate get that proposition from Deputy Miller, and they even went so far as to say that, I didn't even hear another female inmate talking about it to other inmates. What about Deputy Miller, which there's no question that he admits this incident? The Amber Ard incident, yes, sir. And was he terminated at that point? Yes, sir. He was terminated. Where is this argument that he was promoted? He was promoted back at some time before the Amber Ard allegation. Before he ever, was there any evidence that he ever engaged in this or similar conduct at the time he was promoted? Well, there was the allegations that were investigated. That he had engaged in that conduct. The Sonia Smith incident, I think, had occurred by then, but NBI absolved him, and he was promoted. When you say they absolved him, I mean, the reports I've looked at, they couldn't corroborate it. They say he didn't. What did they exactly say? They relayed to Major Barfield, there's nothing to this. And those were the words that they gave to him, there's nothing to this. In his experience, for example, when the Amber Ard allegations came out and NBI came in, when there is something to it, they're criminal charges, Mr. Miller got charged and eventually pled guilty on Amber Ard. That did not happen. Sonia Smith never made criminal allegations or even a civil suit. Yeah, but more specifically, though, what Judge Costa's asking, they didn't just say, hey, nothing to this. I mean, there had to be more formality to it than that. The report that we've been given, Your Honor, is the report that was a part of the record. That was it. They relayed it to Mr. Barfield and said, there's nothing to this. That was the formality they gave. Those are their words? Those were the words that they relayed to him, and he has put that. But what about the written words? Did they get a written report? They did not, Your Honor, that was ever produced to me. No, Lincoln County doesn't have any report from NBI on that. In fact, the only NBI investigatory, the quote, file, unlike the Amber Ard file that's that thick, the file is that piece of paper that's in the record, that one note of the investigation. It's just summaries of interviews. Yes, sir. That's the entire file. But the fact of the matter is, it was relayed to Sheriff Rushing. His subjective knowledge was, as to Sonia Smith, NBI investigated, there's nothing to this. Deputy Hall investigated. There's probably something to it now. Certainly. Certainly, it's on his mind now. And then eventually, the Crystal Smith allegations, which come to his knowledge. How many times before Amber, was he charged with similar conduct? Well, that Sheriff Rushing was aware of? Yes, correct. There are three total allegations before Amber Ard. Sonia Smith, the jailhouse rumor, and Crystal Smith. But Crystal Smith's allegations didn't come to light until, to the Sheriff and the county until 2012, two years after Ms. Ard's assault. You have one of which he was, quote, absolved of, and then one in which he went to jail. Well, you have another where it was the same thing. The jailhouse rumor, there was never any corroboration for that. Was he the only one under the Sheriff's authority and supervision that was accused of this kind of thing, or was this a frequent accusation among prison guards? Your Honor, there's nothing in the record to that effect. But in penal institutions, it's very common for these type of allegations to get made. But there is no record evidence to that effect either way. Now, as to Crystal— They're made because there's a likelihood that it's true, too. Well, Your Honor, that's where there's smoke, there's fire. And under the qualified immunity, we're required to push off that smoke and find the fire. And there's not any here. I mean, Judge Lee was very meticulous in putting down all of the evidence, including these Crystal Smith allegations. And he found, you know, Crystal Smith, they didn't know about this until two years. How many allegations would it take until someone, the jailer should know, the Sheriff should know, that there's this guy posing a serious risk out there? If those allegations are investigated and determined to be unfounded, I could think it'd go on for a long time, Judge. And nobody else is being charged. That doesn't make common sense. No other jailer is? Yeah, if you had five jailers, one was charged 12 times, absolved 12 times, and others were never charged, I mean, I think you would say, well— Well, we have no—there's nothing in the record, and I have no personal knowledge as to how many people were charged. We know about these because they ask, in Qualified Immunity Discovery, who's alleged that Timothy Miller has made these allegations? There was never any other discovery as to have there been other allegations against other jailers. Okay. The final allegation is the allegations about Crystal Smith. And as Judge Costa pointed out, this came to light some two years after the Amber Ard assault. You know, one of the things that is interesting about this is the plaintiffs do make the argument that knowledge by the district attorney would be sufficient knowledge for the county. Of course, when it comes to Sheriff Rushing, that's not true. There could be no constructive knowledge for him. But even so, the DA didn't find out about this until after the Ard assault. Even the DA could not have done anything with those allegations to stop Miller from assaulting Ard. Judge Lee, and let me make one point I wanted to make sure I did make, because there's an allegation in the briefing that Crystal Smith says that Sheriff Rushing, she spoke to Sheriff Rushing and told him about her assault. And there's a citation. It's on page 16 and 17, and the citation is to 14-602-82-717, and that's the Crystal Smith affidavit. And in that affidavit, Crystal Smith says nowhere that she spoke to Sheriff Rushing. That's absolutely just not true. It's not correct. She says, I spoke to the district attorney for Pike, Lincoln, and Walthall counties. The only record evidence before Judge Lee was that Crystal Smith never spoke to Sheriff Rushing about her assault. That's absolutely the case. Judge Lee really summarized this whole thing by saying that there was simply not a longstanding, well-documented pattern of inappropriate sexual behavior by Deputy Miller such that Sheriff Rushing should have been subjectively aware that he posed a risk of harm to female inmates. Now, the plaintiff made failure to train and supervise claims, has not briefed that. To the extent those claims even survive Iqbal, there's simply no substantive facts to support those claims. So if there's no questions on that or the conspiracy claims against Rushing, I'd like to talk briefly about the Lincoln County claims. Again, Judge Lee did a fine job of taking all of the record evidence and putting it down. There is no respondeat superior liability. Clearly the plaintiff alleges a constitutional violation in that she was sexually assaulted, but of course that's not enough. She has to show that a Lincoln County policy was the moving force behind that violation, and she has to show that the policy was maintained with deliberate indifference. Of course that's a high standard. There's no allegation that the policy was, the official policy was we're going to allow jailers to assault inmates. That wasn't the policy. The allegation from the plaintiff is that the final policymaker, Steve Rushing, the sheriff, didn't take adequate precautions to protect females. And, of course, Judge Lee laid out again what Sheriff Rushing did do, which was having them separated, having video, having a work schedule that had a female on each shift. The plaintiff makes much of the fact that there was evidence that there wasn't always a female on shift. The fact of the matter is, though, this court said in Brooks, I'm sorry, Judge King, in the opinion you were involved in, Guevara v. City of Haltom City, that there is no constitutional requirement that a female jailer be on duty. Nevertheless, Sheriff Rushing endeavored to have one on duty all the time, and the simple fact that that policy may have been violated, that alone is not a constitutional violation. So the county had that, and the county also did have this sign-up, this sign-up that said no one-on-one access between female inmates and male jailers. Procedural question here. Yes, sir. And that is, this case was brought against the sheriff in both his personal and his official capacity, and is that the way it is on appeal now? Yes, sir, I believe it is. But it keeps getting mixed up. I mean, is there a difference? Is it the same except for the policy aspect of it? The claims against Sheriff Rushing in his official capacity are nothing more than the claims against Lincoln County. So when I'm talking to you now, as I say, Lincoln. What claims were made against him in his individual capacity that were not made against him in Lincoln County? They're identical, Your Honor. All claims against him were identical? As best as I can tell, yes, Your Honor. There was the failure to protect claim. There was a failure to train and supervise claim. A 1985 conspiracy claim that has morphed from a 1985-3 to a 1985-2 claim. So there's no real evidence even asserted in this case that he committed no acts that would have made him personally liable here because he was removed from the individual situation? Direct participation? Yes. There was no allegation of direct participation in any of it? No, Your Honor. Finally, if I could spend just a few minutes to address the motion for sanctions. This motion, Judge Lee didn't abuse his discretion. It has to be arbitrary. It has to be clearly unreasonable. And he clearly states that this motion is based on nothing more than speculation and conjecture. That motion what? The motion for sanctions. And basically that motion, Your Honor, was that Lincoln County had a statement, Crystal Smith's statement in its possession, that it did not turn over in a timely fashion. And the record evidence demonstrates that Lincoln County obtained that statement in October of 2013 and then turned it over. The plaintiff makes the argument that they had it since August of 2010 because the DA had it. The district attorney for Pike, Lincoln, and Walthall Counties is not a county officer. He's a state official. This court said that in Brooks v. George County, which cited to the Chrissy case. And the Chrissy case had the code section authorizing district attorneys, Section 25-31-11, and that says that it's the duty of the DA to represent the state in front of the grand jury, not the county. The district attorney debates as a state official. The fact that he was given a statement in August of 2010 does not mean Lincoln County was because he's not Lincoln County. When this statement came into the possession of Lincoln County by way of Deputy Miller's attorney in another lawsuit, it was disclosed to plaintiff's counsel, even though it's really not relevant because the statement was given after the plaintiff's alleged assault. So the motion for sanctions makes a big hullabaloo about how Rushing has contradicted himself. This statement contradicts himself. If you will look, the discovery in this case took place back in 2012 when Rushing signed off on interrogatories and gave three different affidavits supplementing just adding additional information. That statement was not in Lincoln County's hands for another year before they found out it existed. So he clearly didn't perjure himself as is alleged or anything of that nature. All in all, Judge Lee provided three voluminous opinions on these motions, and he was very well-reasoned in doing so. There's absolutely no reason to overturn any of those. If you don't have any questions, I will have a seat. Okay. Well, thank you very much. Thank you. Mr. Korbruch. How many allegations does it take, then, for there actually to be fire, not just smoke? I think that's the issue here. There's been numerous allegations that have been made. The report from MBI talks about at least three other people that were interviewed concerning specific allegations about this same jailer, not jumping to many other jailers or how pervasive it was, but this specific guy. And what did the sheriff of Lincoln County do after the 2006 investigation of that matter? Told him, actually promoted him. In 2007, then, the showing of the breasts allegation or, quote, rumor was made. He gives that to his deputy chief to investigate, and what happens then? Nothing. So Mr. Miller is left in a position of having the keys to these jails. Mr. Allen has referred to a statement regarding Mr. Barfield, that it was made to him that these allegations in 2006 were unsubstantiated. There's no affidavit, no statement from Mr. Barfield. That's just words by hearsay from Sheriff Rushing. Now, as far as subjective awareness of Sheriff Rushing, he certainly, the subjective awareness is whether he makes the inference that such a violation of an inmate's rights against being raped in jail by a jailer is a constitutional violation. Well, clearly he knew that having a sexual assault in his jail was a problem if he then refers it on one occasion to MBI and on another occasion to his own person, but yet he doesn't do anything about making sure that there is nothing, that this specific jailer is not put in a position of having interaction with female inmates anymore. On the issue of the sanctions argument, again, in this matter, Judge Lee, looking at his opinion in a footnote, says, I see no reasonable basis to make the inference, then, that this statement should have been given to us during discovery or that the sheriff would have known of the statement from this inmate. Well, that respectfully flies in the face of what the obligation of the court should be, and that is to weigh all the inferences in favor of the nonmoving party, number one, and number two, at least allow us discovery to go and look and depose the very people involved, including this investigator with the DA's office, who, the question must be asked, if he knows that there's a crime that's been committed in the Lincoln County Jail, would it then be a crime not to report it to the sheriff himself? And if he knew of that, whether it was in 2010 or whether the sheriff should have known about it in 2009 when it happened because there was no safeguards in place, isn't that something then discoverable? So we would respectfully submit that we should be allowed the opportunity for discovery, especially when it comes to the Crystal Smith allegation, but likewise that this matter should be reversed in terms of that there are, indeed, genuine issues of material fact. We've pointed to standards that have been set out by the Department of Justice on standards for community confinement facilities, and although those standards were promulgated after the events in this case, even Judge Myerscoff, which is a district judge in the Central District of Illinois, says that those issues, those aspects, are relevant to the issue of deliberate indifference. And so when you come to whether an allegation is substantiated or unsubstantiated, that is a matter that we should be allowed to engage in discovery on, and we would respectfully request that this case be reversed and remanded to the district court. Thank you. Mr. Corby, your timing was very nearly perfect. You ended right on the red line.